IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRENDA CHAMBERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:07cv436-TFM |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*, Linda M. Frazier ("Frazier") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g) , 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court REMANDS THE COMMISSIONER'S decision.

### I.   STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited.   The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the

Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Chambers, age 46 at the time of the hearing, completed the tenth grade. Chambers'

past work experience includes employment as a waitress, school bus driver with a commercial drivers' license, and janitor. She did not engage in substantial gainful work activity between the alleged onset date of January 5, 2004 and the date of decision. Her disability application documents cite asthma and high blood pressure as the reasons for her disability. The ALJ found Chambers was severely impaired by asthma, high blood pressure, and a learning disorder. The ALJ concluded Chambers did not have any impairment or combination of impairments that meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ found Chamber's subjective allegations of pain and functional limitations were not totally credible, and inconsistent with her reported activities. He found she retained the residual functional capacity ("RFC") to perform light-level work with nonexertional limitations. The ALJ also restricted Chambers' work environment to those controlled for exposure to dust, fumes, gases, poor ventilation, extremes of temperature and humidity, and similar conditions. The ALJ determined Chambers could not perform her past relevant work as a bus driver or janitor. The ALJ consulted a vocational expert to determine a person of Chambers' age, education, past relevant work experience, and residual functional capacity was not disabled, but was in fact able to perform work as a hand packer, parking lot attendant, or assembler. Accordingly, the ALJ concluded Chambers is not disabled.[1]

---

[1]R. at 32-33. The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

3

## III.  ISSUES

Chambers raises six issues for judicial review:

1.  Whether the ALJ erred by failing to properly evaluate and determine if Chamber's impairments met the listing at 20 C.F.R. 404 Subpart P § 12.05 C.

2.  Whether the ALJ erred by finding Chambers was able to perform light work.

3.  Whether the ALJ erred by improperly assessing Chambers' RFC.

4.  Whether the ALJ erred by failing to consider the combination of Chambers' impairments?

5.  Whether the ALJ erred by failing to sufficiently justify his rejection of Chambers' hearing testimony.

6.  Whether the ALJ erred by failing to properly develop the record.

## IV.  DISCUSSION

1.  **The ALJ did not err in finding Chambers' impairments failed to meet the criteria of 20 C.F.R. 404 Subpart P §12.05 C.**

Chambers argues the ALJ erred in his determination because he failed to properly evaluate and discuss whether her impairments met the listing at 20 C.F.R. 404 Subpart P §12.05C.  She alleges her IQ score of 64, in combination with her exertional and non-exertional limitations, impose "an additional and significant restriction" on her ability to work, and she is therefore disabled under that regulation.  *See* 20 C.F.R. 404 Subpart P §12.05C.  The Commissioner responds Chambers did not prove her disability because the record in her case does not display the required deficit in adaptive functioning specified within the full text of §12.05.

4

Chambers testified about her education and work history during the administrative hearing. Chambers said, despite repeating two grades and being placed in special education classes, she passed the test to receive a commercial drivers' license and drove a school bus for 17 years. Chambers also testified her poor reading abilities limited her tasks in her current employment as a parttime waitress.[2] Chambers is responsible for her own household chores and grocery shopping and attends church as often as possible, but does not go to shopping malls with others because she feels she slows them down.[3]

Dr. Fred George, Ph.D., examined Chambers at the request of her attorney, and administered the Wechsler Adult Intelligence Scale on which Chambers scored 64 - Verbal, 69- Performance, and Full Scale IQ (64).[4] Dr. George concluded Chambers' intellectual functioning and arithmetic achievement was in the mildly retarded range, with reading and spelling achievement in the moderately retarded range.[5] Dr. George rated Chambers as being able to function independently but requiring assistance in reading.[6] He found she had the "intellectual and memory ability to understand and remember unskilled and semi-skilled occupations," and "unable to function in a job that required reading or writing." Dr. George's evaluation closed by noting Chambers' "limitations in a job setting would be a

---

[2]R. at 275-78.

[3]R. at 283.

[4]R. at 16, 225.

[5]R. at 226.

[6]R. at 226.

result of her physical difficulties and her inability to read and write."[7]  The ALJ noted Dr. George's failure to consider the impact of external factors upon the validity of Chambers' scores "such as [her] educational achievement, vocational history, and daily-living skills. The ALJ found these factors refuted the validity of the Wechsler test results, and noted Dr. George's only non-physical limitation on Chambers' ability to work was her inability to read.[8]

Dr. David Ghostley, clinical psychologist, conducted a consultative evaluation of Chambers.  He found her inability to perform simple mathematical and spelling tasks, with limited ability to think in abstract terms, placed her in the Borderline Range.[9]  Dr. Ghostley commented favorably on Chambers' "[I]nsight into acknowledging her limitations, accepting responsibility for them, and recognizing a need for help was good as was her judgment with regard to social functioning, family relationships, finances, employment, and future plans."[10]

The ALJ viewed Chambers' "steady work record with substantial periods of continuous employment," ability to travel alone by car or public transportation, realistic assessment of her own limitations, rearing two sons, and independent life as a sound basis to reject the validity of the Wechsler scores reported by Dr. George.[11]  The ALJ cited

---

[7]R. at 226.

[8]R. at 16.

[9]R. at 203-04.

[10]R. at 22, 214.

[11]R. at 17-18.

Chambers' activities to support his decision finding no deficits in adaptive functioning and no significant impairment in general intellectual functioning.[12]

The relevant regulatory provision states "[M]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . ." 20 C.F.R. 404 Subpart P § 12.05. The regulation continues by setting out four sets of alternative criteria, each of which qualify an applicant for a finding of disability. Subparagraph C states "[A] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function." 20 C.F.R. 404 Subpart P § 12.05C. The Eleventh Circuit has stated

> Generally, a claimant meets the criteria for presumptive disability under section 12.05C when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities. This court, however, has recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (internal citation omitted).

The ALJ did not err by finding Chambers did not meet the criteria in § 12.05C. He cited Chambers' extensive adaptive functioning as evidence the Wechsler scores were not "a valid representation of [her] level of intellectual functioning." This is a supportable application § 12.05, under which "a claimant must at least (1) have significantly subaverage

---

[12]R. at 18.

7

general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); *see also Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1207 (M.D. Ala. 2002) (holding a claimant must demonstrate "deficits in adaptive behavior" under § 12.05). The ALJ's lengthy discussion of Chambers' daily activities, abilities, and adaptive behaviors support his conclusion of non-retardation under § 12.05C.

Chambers argues the ALJ did not cite a medical opinion in his § 12.05C decision. However, the ALJ was required to consider a claimant's activities when interpreting § 12.05C. *Lowery*, 979 F.2d at 837. This court has followed the Eleventh Circuit and recognized the importance of work history and activities when applying § 12.05C. *See Whetstone v. Barnhart*, 263 F.Supp.2d 1318, 1325-26 (M.D. Ala. 2003). The ALJ's determination that Chambers was not mentally retarded stands on even firmer ground when one considers that, whatever limitations her mental functioning may impose, they were no impediment during her previous employment as a commercially licensed school bus driver. Chambers' work history and higher adaptive functioning provided firm support for the ALJ's decision under the caselaw of this circuit.

The ALJ's determination on this issue is supported by substantial evidence, and this court finds no error in the ALJ's decision.

2. **The record does not support the ALJ's finding that a person with Chambers' RFC is able to perform the occupations identified by the vocational expert.**

8

Chambers argues the ALJ erred in finding her able to perform the occupations identified in the administrative decision, and a remand is required for a correct assessment of her residual functional capacity (RFC). The Commissioner responds the ALJ committed harmless error when he failed to specifically discuss and refute each occupational limitation imposed by Chambers' treating physician.

During his discussion of Chambers' RFC, the ALJ cites Chamber's own testimony that, due to her asthma and hypertension, she could stand four to five hours before having to rest.[13] Having previously remarked upon the long treatment relationship between Chambers and her primary physician, Dr. Lewe West, the ALJ gave significant weight to Dr. West's opinion.[14] Further, the ALJ specifically references the Medical Source Statement (MSS) prepared by Dr. West as a document considered in his determination.[15] The MSS rated Chambers as able to perform light work, limited to 4 hours standing or walking, but limited her to occasional (up to a third of the workday) performance of activities such as pushing/pulling, climbing, gross/fine manipulation, bending, or reaching.[16] The ALJ wrote "[E]xcept for the limitation to standing and/or walking up to four hours a day, Dr. West's assessment allows the claimant to do a full range of light work."[17] The ALJ then specifically

---

[13]R. at 24, 282-83.

[14]R. at 22, 24.

[15]R. at 24.

[16]R. at 239.

[17]R. at 24.

rejected the four hour limitation on standing/walking only four hours a day by finding Chambers could do so for at least six hours during a workday.[18]  This finding was the only obvious caveat to the ALJ's adoption of the MSS.

The transcript of the administrative hearing shows the ALJ heard the testimony of Casey Vass, a vocational expert (VE), on the issue of which jobs Chambers was able to perform. The ALJ's initial hypothetical to the VE assumed a person of Chambers' age, education, and work experience with a "residual functional capacity for light work; non-exertionally limited to simple, routine, repetitive tasks as required by unskilled labor and not to[o] detailed or complex tasks as required by semiskilled work," with specified environmental limitations.[19]  The VE listed hand packer, parking lot attendant, and assembler.[20]  The second hypothetical asked the VE to assume the same individual with the RFC reflected in the MSS prepared by Dr. West.  The VE stated such a person would be unable to perform the jobs listed due to the four hour limitation on standing and/or walking. The ALJ then noted Dr. West's direction that Chambers be limited to "only occasional use of the upper extremities."[21]  The VE then incorporated those limitations into her opinion and stated "[T]here would be limited jobs because of the limitations with fine gross dexterity.

---

[18]R. at 24.

[19]R. at 290.

[20]R. at 291-92.

[21]R. at 292.

It would be very limited. I can list a couple."[22] The ALJ did not ask the to list those jobs a person with the referenced RFC could perform.

Chambers challenges the ALJ's finding her able to perform the occupations which corresponded to the first hypothetical posed to the VE. She argues the limitations imposed by the MSS do not permit her to work as a hand packer, parking lot attendant, or assembler. Her argument is based on the limitations in the MSS, which was adopted by the ALJ, as modified. The Commissioner argues the ALJ's failure to specifically refute Dr. West's occasional limitations on listed physical activities was harmless error, because Chambers does not assert problems with fine/gross dexterity, and the ALJ was under no duty to discuss unsupported limitations. Specifically, the Commissioner argues the "ALJ is not required to adopt portions of a treating physician's [opinion] that are not supported by substantial evidence."[23]

The Eleventh Circuit has noted that, where an ALJ finds it necessary to consult a vocational expert, the expert's testimony is only deemed substantial evidence where the ALJ posed a hypothetical question which included all of the claimant's impairments. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 n.7 (11th Cir. 2004) (citing *Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir.1999). The ALJ is not required, however, to include limitations in the hypothetical that were properly rejected as unsupported. *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1161 (11th Cir.2004). Here, the ALJ posed a hypothetical

---

[22]R. at 292-93.

[23]Def. Br. at 8.

to the VE which contained limitations proscribed by Chambers' treating physician, whose opinion was given significant weight. After reviewing the MSS, the VE adjusted her testimony to reflect Chambers' inability to perform the jobs previously listed. The transcript shows the ALJ himself commenting on Dr. West's limitations regarding Chambers' occasional use of her upper extremities, and reflects his notice of the impact the MSS had on the jobs she could perform.[24] Despite the limitations imposed by Dr. West, the ALJ found Chambers able to perform the occupations listed by the VE.[25] Thus, the ALJ decision poses a contradiction which the Court cannot reconcile without some clarification by the ALJ.

The Commissioner's argument that the MSS limitations were not credibly established, and it was therefore unnecessary for the ALJ to specifically refute them, is correct to the extent the record does not reflect problems with Chambers' fine/gross manipulation abilities. However, the Court is reluctant to adopt the Commissioner's argument of harmless error when the ALJ himself could have dismissed the MSS limitations which he believed to be unsupported. This reluctance is heightened when the record shows the ALJ carefully set forth his own findings on Chambers' ability to stand and/or walk, which diverged from the MSS limitations.[26] The ALJ's decision to give significant weight to Dr. West's opinion binds the Court to credit the MSS, as modified by his decision. Those modifications are limited to Chambers' ability to stand/walk, and the Court cannot read others in as the Commissioner

[24]R. at 292.

[25]R. at 26.

[26]R. at 24.

urges.

In light of the obvious conflict created by the ALJ's modified adoption of the MSS prepared by Dr. West, and his conclusion that Chambers is able to perform the occupations listed in response to the first hypothetical, the Court remands this case for clarification as to Chambers' actual RFC.

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the case should be remanded for clarification of the ALJ's findings as to Chambers' actual RFC.  It is, therefore, **ORDERED** that the decision of the Commissioner is **REVERSED and REMANDED.**   A separate order is entered herewith.

Done this 3rd  day of November, 2007.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE